# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

STEADFAST INSURANCE COMPANY,

       Plaintiff,

v.                                 Case No. 06-CV-15537-DT

NATIONAL ABSTRACT AGENCY, INC., et al.

       Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S
## "MOTION FOR SUMMARY JUDGMENT"

Pending before the court is Plaintiff Steadfast Insurance Company's

("Steadfast's") "Motion for Summary Judgment," filed on June 29, 2007.  The motion

has been fully briefed and the court concludes that a hearing is unnecessary.  *See* E.D.

Mich. LR 7.1(e)(2).  For the reasons stated below, the court will grant Steadfast's

motion.

## I.  BACKGROUND

The instant declaratory action involves a coverage dispute arising out of a "Title

Agents, Abstractors and Escrow Agents Errors and Omissions Liability Insurance

Policy" (the "policy"), issued by Steadfast to Defendant National Abstract Agency, Inc.

("National"), a title insurance agency.  Steadfast brought the instant declaratory action to

determine its rights and obligations under its policy with National.  (*See generally* Pl.'s

Compl.)  This case stems from the related case of *Ticor Title Ins. Co. v. National*

*Abstract Agency, Inc., et al.,* Case No. 05-73709,[1] wherein Ticor Title Ins. Co. ("Ticor"),

National's underwriter, alleged that National improperly transferred escrow funds from

National's escrow account into the escrow account of a different title insurance agency,

in breach of the parties' contract.[2]  (*See generally* Ticor's Compl.)

On May 25, 2005, Steadfast issued a "Title Agents, Abstractors and Escrow

Agents Errors and Omissions Liability Insurance Policy" to National.  (*See generally*

Policy, Pl.'s Ex. I.)  According to the terms of the policy, Steadfast agreed to pay on

behalf of National any amount that National became obligated to pay "as damages"

because of a claim "based on an act or omission" in National's "rendering or failing to

render professional services for others."  (*Id.* at ¶ A.)  The policy defines damages as

"the monetary portion of any judgment, award or settlement," and further states that

damages do not include escrow or funds "that have been stolen, converted,

commingled, embezzled, or misappropriated by any person, at any time, under any

circumstances."  (*Id.* at ¶ E.12.)

Defendant Edward Harris is, and at all relevant times was, the president and sole

owner of National, which was formed in June 2005.  (Harris's 2/20/06 Dep. at 14, 23,

---

[1]The two cases have been consolidated for the purpose of discovery.  (2/8/07 Order.)

[2]Ticor is in the business of providing title insurance services of the kind routinely utilized in real estate transactions.  (Ticor's Mot. for S.J. at 1.)  On May 17, 2005, Ticor and National entered into an "Issuing Agency Contract," whereby National was appointed to act as Ticor's agent in issuing title insurance commitments, policies, endorsements and other title assurances approved by Ticor.  (Issuing Agency Contract at ¶ 1, Ticor's App. Ex. 1.)  Pursuant to the contract, National was required to keep safe and segregated in an escrow account all monies entrusted to it by Ticor or others in the course of its title issuing operations.  (*Id.* at ¶¶ 4.G, 8.)

47, Pl.'s Ex. A.)  While operating National, Harris was involved with the operations of another title insurance agency, Defendant City Title Agency, Inc. ("City Title").  Victor Fuciarelli, City Title's vice-president, had known Harris since the 1980s, and the two had worked together at other title insurance agencies.  (Harris's 5/23/07 Dep. at 5-6, Ticor's App. Ex. 2; Fuciarelli's Dep. at 29, 76, Ticor's App. Ex. 4.)  Although the exact nature of Harris's relationship with City Title is in dispute, it is clear that Harris was intimately involved in the operations of City Title during his tenure with National.[3]

On June 23, 2005, City Title and National's shared secretary, Suzanne Forget, received a telephone call from bank representative Kim Krzesenski, informing her that there was a shortage in City Title's escrow account.  (Forget's Dep. at 38, Ticor's App. Ex. 5.)  Forget called Harris, who was already en route to the bank on a different matter. (*Id.*)  Upon arrival at the bank, Harris spoke with Krzesenski, who confirmed that the City Title escrow account was short $269,575.  (Krzesenski's Dep. at 24, Ticor's App. Ex. 6.)  To remedy the shortage, Harris wrote two checks, one in the amount of $240,000, the other in the amount of $35,000, from National's escrow account payable to the bank, for the purpose of covering City Title's shortages.  (Harris's 2/20/06 Dep. at 101-102, Ticor's App. Ex. 3.)  After the checks were deposited into City Title's account,

---

[3]When National began operations, City Title was winding up its operations with the same secretary, Suzanne Forget, serving both entities.  (Forget's Dep. at 30, 42, Ticor's App. Ex. 5.)  In addition to sharing secretarial services, National and City Title also shared the same office (within a building that Harris owned), had the same phone number and maintained escrow accounts at the same bank.  Further, National hired all of its employees from City Title, and Harris shared accounting responsibilities for City Title's Clinton Township branch.  Harris also performed closings for City Title and had check signing authority for City Title's escrow account.  (Harris's 5/23/07 Dep. at 12, 15, Ticor's App. 2; Fuciarelli's Dep. at 50, Ticor's App. Ex. 40; Forget's Dep. at 30-31, 81, Ticor's App. Ex. 5; Krzesenski's Dep. at 10, Ticor's App. Ex. 6.)

City's outstanding debts were paid, leaving it with a positive balance of $5,424.82. (Krzsenski Aff., Nat'l and Harris's Resp. to Ticor's Mot. For S.J. Ex. 8.)

Harris testified that he believed that the funds belonged to City Title because when Forget called him to tell him of the shortage, she indicated that City Title's escrow account was short because funds that should have been deposited into its account were deposited into National's account by mistake, and that it was necessary for the funds to go back into City Title's account.  (*Id.*)  Forget first testified that, at least during their initial phone call, she did not tell Harris that money meant for City Title's account had been mistakenly deposited into National's account; she told him only that there was a shortage in City Title's account.  (Forget's Dep. at 41, Ticor's App. Ex. 5.)  Later in her deposition, Forget testified that she did explain to Harris over the phone that she believed that funds were mistakenly put into National's account when they should have been put into City Title's account.[4]  (*Id.* at 53.)  Forget's stated belief, she testified, stemmed from having deposited a certain check intended for City Title's account into National's account.[5]  (*Id.* at 43-45.)

[4]Forget did note that, from time to time, mistakes would be made such that a check that was supposed to have been deposited into National's account would be deposited into City Title's account by mistake, and vice versa.  (*Id.* at 77-79.)

[5]When Krzesenski called Forget to tell her of City Title's shortage, she did not represent that the shortage was due to funds being mistakenly deposited into National's escrow account when they should have been deposited in City Title's, nor did she suggest that funds should be transferred from National's escrow account to City Title's escrow account in order to cover the shortage; Krzesenski indicated only that there was a shortage in City Title's account.  (Forget's Dep. at 40, Ticor's App. Ex. 5; Krzesenski's Dep. at 22-23, Ticor's App. Ex. 6.)

In early September 2005, approximately ten weeks after the transfer of funds, Harris notified Ticor that National's escrow account was missing funds. (Harris's 2/20/06 Dep. at 94, Ticor's App. Ex. 3.) Harris testified that, prior to that point, he was unaware that City Title was not actually entitled to the funds and that his transfer was a mistake. (*Id.*) Since discovering that City Title was never entitled to the funds, Harris stated that he has asked Fuciarelli numerous times to return the escrow funds, but to date the funds have not been returned.[6] (*Id.* at 109, Ticor's App. Ex. 3; Harris's 5/23/07 Dep. at 60-61, Ticor's App. Ex. 2.) On September 16, 2005, Ticor terminated its agreement with National, citing missing escrow funds. (9/16/05 Ticor Letter, Ticor's App. Ex. 7.)

On September 28, 2005, Ticor filed suit against National, Harris and City Title, asserting the following counts: (1) breach of contract (National), (2) breach of the personal guarantee (Harris), (3) breach of fiduciary duty (National and Harris), (4) larceny (National and Harris), (5) larceny by conversion (City Title), (6) embezzlement (National and Harris), (7) unjust enrichment (City Title) and (8) negligence (National, Harris and City Title). (*See generally* Ticor's Compl. and First Am. Compl.) On October 25, 2005, City Title filed a cross-complaint against National and Harris, asserting (1) that it is entitled to indemnity in the event that it is found liable to Ticor, (2) negligence, (3) fraudulent misrepresentation and (4) breach of fiduciary duty. (*See* generally City Title's Cross-Compl.) On November 2, 2005, National and Harris filed a cross-complaint against City Title, alleging (1) unjust enrichment, (2) that National and Harris are entitled

---

[6]All but $5,424.82 of the $275,000 deposited into City Title's account went to pay City Title's debts and obligations. (Aff. of Krzesenski, Nat'l and Harris's Mot. to Dismiss, Ex. C.)

to a constructive trust, (3) fraud and misrepresentation, (4) conversion, (5) interference with contract and (6) that National and Harris are entitled to indemnity. (*See generally* Nat'l and Harris's Cross-Compl.)

On June 29, 2007, (1) Ticor filed its "Motion for Partial Summary Judgment," (2) National and Harris filed their "Motion to Dismiss" the larceny and embezzlement counts in Ticor's Complaint and/or for "Partial Summary Judgment," (3) National and Harris filed a "Motion for Summary Judgment of Unjust Enrichment Claim" against City Title and (4) National and Harris filed a "Motion to Dismiss and/or for Summary Judgment" of City Title's cross-complaint.

In this court's September 13, 2007 opinion and order in the underlying *Ticor* action, the court ruled upon the parties' multiple motions for summary judgment. (9/13/07 Order.) The court found that there was no genuine issue of material fact that National breached its contract with Ticor by failing to disburse funds "only for the purpose for which they were entrusted." (*Id.* at 12-14.) The court based its finding on Harris's improper transfer of $275,000 from National's escrow account into City Title's escrow account. (*Id.*) The court further found that Ticor suffered damages as a direct result of Harris's improper transfer, and National and Harris were liable to Ticor for such damages.[7] (*Id.*)

---

[7]The amount of damages National and Harris are legally obligated to pay Ticor has yet to be determined. (*Id.* at 13-14.) Although Ticor alleges that it has suffered $210,700 in damages ($124,449 in claims and $86,251 in attorneys' fees) as a result of Harris's improper transfer of escrow funds, the court is awaiting supporting documentation from Ticor before settling on a particular figure. (*Id.*; Ticor's Mot. at 10.)

6

On December 13, 2006, Steadfast filed this declaratory action against Defendants, seeking a determination of its obligations under the insurance policy and a reimbursement of all expenses incurred in defending National and Harris from the claims asserted against them in the underlying action. (Pl.'s Compl. at 8.) Steadfast is presently defending National and Harris against the claims asserted against them in the underlying action, subject to a full reservation of rights, including the right to be reimbursed for legal fees and expenses. (Pl.'s Mot. at 6.) On June 29, 2007, Steadfast filed its "Motion for Summary Judgment," which is currently pending before the court.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The moving party must first show the absence of a genuine issue of material fact.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323).  The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  They must put forth enough evidence to show that there exists a genuine issue to be decided at trial.  *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256).  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury."  *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material.  *See id.* at 252 (emphasis and alteration in original) (citation omitted) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'").  A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III.  DISCUSSION

Steadfast maintains that there is no coverage under the policy it issued to National because (1) the funds at issue were converted and the policy does not cover damages that are based upon converted funds, (2) the funds were commingled and the

policy does not cover damages that are based upon commingled funds and (3) Harris was not rendering "professional services" when he transferred the funds, as required by the policy.  (*See generally* Pl.'s Mot.)  Defendants counter that the funds were neither commingled nor converted and, even if they were, Ticor's complaint asserts additional allegations against National and Harris that have no relation to the improper transfer of funds, and thus, are covered by the policy.  (*See generally* Ticor's Resp.; Nat'l and Harris's Resp.)

Insurance contracts are analyzed under Michigan contract law.  *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 455 (6th Cir. 2003).  An insurance contract should be read and interpreted as a whole.  *Fragner v. Am. Cmty. Mut. Ins. Co.*, 502 N.W.2d 350, 352 (Mich. Ct. App. 1993).  An insurance contract is clear if it fairly admits but one interpretation.  *Id.*  If an insurance contract's language is clear, its construction is a question of law for the court.  *Id.*  An insurance contract is ambiguous if, after reading the entire contract, its language can reasonably be understood in differing ways.  *Id.*

The insurer generally has a duty to defend its insured.  *Northland Ins. Co.*, 327 F.3d at 455.  Even if there are theories of liability not covered by the policy, the duty to defend includes the entire action if there are any theories of recovery that fall within the policy.  *Id.*  However, when "an insurer has specifically and explicitly excluded coverage with unambiguous policy language, the express exclusions will free the insurer from any duty to defend."  *Id.* (quoting *Upjohn Co. v. Aetna Cas. and Sur. Co.,* 768 F.Supp. 1186, 1196 (W.D. Mich. 1990)).

The policy at issue provides in pertinent part:

A.  COVERAGE

The Company will pay on behalf of an Insured, subject to the Limit of Liability, all amounts in excess of the Deductible that an Insured becomes legally obligated to pay as Damages and Claim Expenses because of a Claim that is both made and reported to the Company during the Policy Period or any Optional Extended Reporting Period based on an act or omission in the Insured's rendering or failing to render Professional Services for others.

. . . .

E.  DAMAGES means the monetary portion of any judgment, award or settlement, provided such settlement is negotiated with the assistance and approval of the Company.  Damages do not include:

. . . .

12.  amount of escrow, trust, mortgage or any other kind or type of money, funds, securities, property, assets, or any negotiable instruments or documents that have been stolen, converted, commingled, embezzled or misappropriated by any person, at any time, under any circumstances.

(Policy at ¶¶ A, E, Pl.'s Ex. I.)

The policy covers damages that the insured becomes legally obligated to pay "because of a claim" "based on an act or omission in the insured's rendering or failing to render professional services."  (*Id.* at ¶ A.)  Damages are defined as "the monetary portion of any judgment, award or settlement," but do not include any "amount of escrow, trust, mortgage or any other kind or type of money, funds, securities, property, assets, or any negotiable instruments or documents that have been stolen, converted, commingled, embezzled or misappropriated by any person, at any time, under any circumstances."  (*Id.* at ¶ E.12.)

The court's September 13, 2007 opinion and order in the underlying *Ticor* action pronounced National and Harris liable for the damages suffered by Ticor as a result of

Harris's improper transfer of escrow funds. For there to be coverage under the policy for these damages, the damages must be based on an act or omission in Harris's rendering or failing to render professional services and *cannot* be based upon funds "that have been stolen, converted, commingled, embezzled or misappropriated by any person, at any time, under any circumstances." (*Id.* at ¶¶ A, E.12.) Even assuming that the transferred funds were not stolen, converted, embezzled or misappropriated,[8] the court holds that a finding of commingling is readily made.

Defendants argue that the funds were not "commingled" because they were "merely transferred from one escrow account to another escrow account" for safekeeping. (Ticor's Resp. at 12; Nat'l and Harris's Resp. at 8.) To the contrary, the funds were transferred to cover City Title's shortages, not to be kept safe for National. Further, the plain meaning and dictionary definition of "commingle" supports a finding that the funds at issue were commingled. When interpreting a disputed term, a court may properly look to the plain meaning and a dictionary definition for guidance. *City of*

_____

[8]As was held in the court's order, a finding of common law conversion cannot be made against Harris because he did not have a duty to return the specific money entrusted to him; rather, he had a duty to return an amount of money equal to the amount that he improperly transferred. *See AFSCME Intl. Union, et al. v. Bank One, et al.*, 705 N.W.2d 355, 364 n.6 (Mich. Ct. App. 2005). Likewise, a claim of statutory conversion cannot succeed because statutory conversion is "not designed to provide a remedy against the individual who has actually stolen, embezzled, or converted the property." *Marshall Lasser, PC v. George*, 651 N.W.2d 158, 162-63 (Mich. Ct. App. 2002). Furthermore, a finding that the funds were, as a matter of law, stolen, embezzled or misappropriated cannot be maintained because such offenses require felonious intent. *See Hoye v. Westfield Ins. Co., 487 N.W.2d 838, 840* (Mich. Ct. App. 1992*); People v. Artman*, 553 N.W.2d 673, 676 (Mich. Ct. App. 1996). As the court previously stated, it does not have sufficient evidence before it to find that Harris *must* have harbored a culpable state of mind when transferring the funds. (*See* 9/13/07 Order at 28-29.)

*Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 586 (6th Cir. 2001). The plain meaning of "commingle" involves an element of mixing or blending together, and a lack of segregation. Black's Law Dictionary defines "commingle" thus: "[t]o put together in one mass; *e.g.* to combine funds or properties into common fund or stock." *Black's Law Dictionary* 186 (6th ed. 1991). Random House Webster's College Dictionary defines "commingle" as follows: "to mix or mingle together; combine." *Random House Webster's College Dictionary* 264 (2nd ed. 1997).

Inasmuch as the word "commingle" is subject to differing interpretations, the court is persuaded that what occurred to National's funds is encompassed by all reasonable definitions of "commingle." A total of $275,000 of National's escrow funds were transferred into City Title's escrow account, then subsequently used to pay City Title's debts and obligations. To date, the funds have not been returned to National. When asked in his deposition whether the transferred funds were "mixed in with the money in City Title's escrow account," Harris replied, "[y]es."[9] (Harris's 5/23/07 Dep. at 48, Pl.'s Ex. C.) It is an unsustainable proposition to suggest that National's funds were kept separate from City Title's funds even after (1) the funds were placed into City Title's account with the alleged belief that they belonged to City Title, (2) the funds were not earmarked as belonging to National so as to keep them separate from City Title's

_____

[9]Although Harris answered in the negative when subsequently asked whether the funds were "commingled," his testimony that National's funds were mixed in with City Title's funds is undisputed and remains supported by the whole of the evidence. That Harris apparently does not believe that commingling results when one set of funds is mixed in with another separate set of funds, does not necessitate a finding that such is actually the case. Unsupported allegations setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment. *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 69-70 (6th Cir.1982).

funds and (3) the funds were used to pay City Title's debts and obligations and never returned to National. Accordingly, the court finds that there is no genuine issue of material fact that the funds at issue were commingled. Furthermore, because the plain language of the policy provides that damages do not include claims that the insured is legally obligated to pay based on, *inter alia*, commingled funds, the court is convinced that, as a matter of law, there is no coverage under the policy for any monetary judgment or award that National and/or Harris are legally obligated to pay based on Harris's improper act of transferring and commingling funds.[10]

To further illustrate this point, the court finds the rather factually similar case of *Northland Ins. Co.* particularly instructive. The plaintiff-insurer in *Northland* issued a "Title Agent, Abstracter and Escrow Agent Errors and Omissions Liability Policy" to Cailu Ins. Corp., a title insurance agency. *Northland*, 327 F.3d at 450. Pursuant to the policy, the plaintiff was obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of a negligent act, error or omission in the rendering of or failure to render professional services as a title agent, abstracter, escrow agent and notary public." *Id.* The policy excluded coverage for "any damages arising out of the commingling, conversion, misappropriation or defalcation of funds or other property." *Id.* at 451. After checks written by Cailu had been returned for insufficient funds, an audit of Cailu's escrow account revealed that Cailu was short approximately

---

[10]As discussed in further detail below, the court, in its September 13, 2007 opinion in the underlying action, found that National and Harris were liable to Ticor for the damages that Ticor suffered as a result of the improper transfer. (9/13/07 Order at 12-14.) Insofar as any damages that National and Harris are liable to pay are "based on" Harris's improper transfer and commingling, there is no coverage under the policy.

$300,000. *Id.* Thereafter, Cailu's underwriter filed suit against Cailu, alleging breach of the title insurance agreement, breach of statutory fiduciary duty, embezzlement, defalcation, conversion and commingling of funds. *Id.* The plaintiff agreed to provide Cailu with a defense, subject to a full reservation of rights. *Id.* The plaintiff then filed a declaratory action to determine its obligations under the insurance policy. *Id.* In affirming the district court's ruling that there was no coverage under the policy as a matter of law, the Sixth Circuit held, "[t]he district court below held that any damages sustained as a result of the breach of contract, conversion, commingling, defalcation, embezzlement, or breach of fiduciary duty fell within the exclusions of the policy regardless of whether the conduct was negligent or intentional. We agree with this finding." *Id.* at 456. Because Cailu was alleged to have engaged in acts of embezzlement, defalcation, conversion and commingling of funds, the court determined that the plaintiff had no duty to defendant Cailu because such conduct by the insured was excluded under the plain language of the policy. *Id.* at 457. This court is persuaded that the reasoning of *Northland* is applicable to the instant case and lends further credence to the court's finding that any damages based upon Harris's improper transfer and commingling of funds, and for which National and Harris are found liable, constitute damages that are excluded by the policy.[11]

---

[11]Steadfast further argues that an additional, independent basis for denying coverage is rooted in the policy requirement that the claim be based on an act or omission in the insured's rendering or failing to render "*professional services*" on behalf of National. (Pl.'s Mot. at 11-12.) Steadfast maintains that Harris's improper transfer of funds was not related to National's business operations and did not constitute a "professional service" on behalf of National. (*Id.*) In light of the court's determination that, because the funds were commingled, there is no coverage as a matter of law, the court need not address Steadfast's argument.

Defendants' final argument is that, even assuming that the policy at issue excludes coverage for damages "based on" Harris's improper transfer of escrow funds, Ticor's complaint asserts additional allegations wholly unrelated to the transfer of funds, and for which there is coverage under the policy. At the outset, the court recognizes that Ticor does in fact allege in its complaint additional improprieties not related to the improper transfer of funds. Specifically, Ticor asserts that National failed "to receive and process applications for title assurances in accordance with the provisions of state law and/or regulations, in conformity with usual and customary practices and procedures, and/or prudent underwriting principles" and failed "to reconcile the escrow account on a monthly basis." (Ticor's Am. Compl. at ¶ 21.)

The court first notes that although Ticor alleges that National and Harris breached the contract in ways unrelated to the transfer, it presents no supporting evidence, and fails to address the issue beyond the bare assertions made in its complaint. Although the court does not rule out the possibility that such a claim could indeed be proven at some future point in the litigation, these nontransfer-related allegations have not been ruled upon by the court, and thus, have no relation to the monetary judgment detailed in the court's September 13, 2007 opinion and order in the underlying action. All four motions for summary judgment filed in the underlying action concerned themselves solely with Harris's improper transfer. Consequently, the court's ruling was relegated exclusively to that issue.[12] More to the point, the court's

---

[12]In fact, in the court's order, the court specifically stated that its analysis was limited to the breach of contract claim as it related to the improper transfer of escrow funds. (9/13/07 Order at n.10.)

determination of a monetary judgment in favor of Ticor was based *exclusively* on

Harris's improper transfer and commingling of funds, which constituted a breach of

National's promise to ensure that escrow funds are disbursed "only for the purpose for

which they were entrusted." (*See generally* 9/13/07 Order.) The damage award was

not based upon on any nontransfer-related impropriety, such as a failure to properly

process applications for title assurances or a failure to reconcile the escrow account on

a monthly basis. The damages that National and Harris are thus far legally obligated to

pay are "because of a claim . . . based on an act or omission" of Harris. Because that

"act or omission" of Harris involves the improper transfer and commingling of funds, the

damages stemming from the improper transfer and commingling are expressly excluded

by the policy.[13]

 The court takes care to acknowledge that, insofar as National and/or Harris

become liable for damages that are not based on Harris's improper transfer and

commingling of funds, there may well be coverage under the policy. The court does not

have sufficient facts before it to determine whether there would be coverage under such

a scenario as a matter of law.

## IV. CONCLUSION

---

[13]Further without merit is Ticor's claim that coverage exists because it is seeking reimbursement of the third-party claims it has paid, rather than a direct recovery of the improperly transferred escrow funds. (Ticor's Resp. at 12.) The unambiguous policy language provides that there is coverage for damages that an insured is liable to pay because of a claim "*based on* an act or omission in the insured's rendering or failing to render professional services." (Contract at ¶ A) (emphasis added.) The policy then goes on to exclude from the definition of damages those funds that have been "stolen, converted, commingled, embezzled or misappropriated." (*Id.* at ¶ E.12.) Because the damages at issue are "based on" Harris's improper transfer and commingling, they are excluded by the policy.

IT IS ORDERED that Steadfast's "Motion for Summary Judgment" [Dkt. # 20] is

GRANTED. To the extent that National and/or Harris are legally obligated to pay

damages based on Harris's improper transfer and commingling of funds, those

damages are not covered by the policy, and Steadfast is entitled to be reimbursed for

costs incurred in defending National and Harris. The court does not express an opinion

regarding whether damages based on other, nontransfer-related improprieties of Harris

or National are covered by the policy.


s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: September 25, 2007


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 25, 2007, by electronic and/or ordinary mail.


s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522